NATHANIEL M. WHITMORE *versus* MICHAEL WOODWARD.

By Rev. Stat. c. 114, § 73, " the right, title and interest which any person has, by virtue of a bond or contract, to a deed of conveyance of real estate, on specified conditions," is liable to be attached and held, after as well as before the condition has been performed, where no valid conveyance of the title was made prior to the attachment.

The waiver of performance at the time specified in a contract for the conveyance of land, attaches to the contract and becomes a part of it, and the creditor takes it, by the provisions of the statute, as it belonged to the debtor.

Between the parties to such contract for the conveyance of real estate, no lien attaches to the land. But in relation to the creditor, the statute declares it to be an attachable interest, as if it " were tangible property." An attachment, therefore, of " all the right, title and interest of the said debtor in and to the said real estate described in said indenture," is a valid attachment of the right by virtue of the contract.

If the owner of the land contracted to be conveyed, without any fraudulent intention on his part, after an attachment thereof, conveys the land to a third person, who takes it for the purpose of defrauding the creditors of the debtor, a bill in equity may be maintained by the purchaser of the debtor's right against the fraudulent grantee, to obtain a conveyance of the land, without joining as a party, the original owner.

An assignment of the debtor's interest by virtue of a contract for the conveyance of land, made and received for the purpose of defrauding the creditors of the assignor, is void against creditors, subsequent as well as prior to the assignment.

If the fraudulent grantee has paid part consideration, and the plaintiff in equity is willing to admit, that the grantee holds in trust, and to convey to the plaintiff upon receiving such sum as was paid by him, no objection can arise to such an adjustment.

THIS case was heard upon a demurrer to the following bill in equity inserted in a writ.

" In a bill of complaint in equity wherein your orator, Nathaniel M. Whitmore, humbly shows your honors, that one Allen Crowell of Gardiner, in the county of Kennebec, did on the 13th day of June, A. D. 1835, make and enter into an indenture with Robert H. Gardiner, of the said Gardiner, wherein and whereby among other things the said Crowell, on his part, covenanted and agreed with the said Gardiner, to purchase of the said Gardiner a certain tract of land situate in said Gardiner (described in the bill) and to pay said Gardiner therefor

thirty dollars on or before the first day of June next following the date of said indenture, and the further sum of one hundred and fifty dollars in two equal annual payments with annual interest.

" And the said Gardiner, on his part, covenanted and agreed with said Crowell, among other things, that if the said Crowell should well and truly pay to said Gardiner the first payment as aforesaid and interest at the time above before mentioned, that he, the said Gardiner, upon demand of the said Crowell, would make and execute a good and sufficient deed of said premises, provided the said Crowell should immediately thereupon reconvey the same premises to him, the said Gardiner, by deed of mortgage, and make and execute a bond to said Gardiner, conditioned to pay him the sum of one hundred and fifty dollars in two equal annual payments, payable the first day of June each year from the date of said indenture annually, and that the said Crowell might enter upon the said premises in contemplation of the purchase, all of which will appear by said indenture, to which your orator craves leave to refer, when produced to the honorable Court; that upon the execution of said indenture by the said Crowell and Gardiner as aforesaid, the said Crowell did immediately enter upon the premises, and began to erect buildings and make improvements, and has continued to occupy the said premises to the time of the filing this bill of complaint.

" And your orator further shows that the said Crowell was justly indebted to one Lincoln Perry of said Gardiner, on and before the seventh day of August, A. D. 1846, in the sum of three hundred seventeen dollars and fifty-five cents, and for the purpose of securing and collecting his said debt against the said Crowell, the said Perry sued out his writ of attachment against the said Crowell on the said seventh day of August, A. D. 1846, returnable to the District Court for the Middle District, then next to be held at Augusta in and for said county of Kennebec, on the first Tuesday of December, A. D. 1846, and on the same seventh day of August delivered said writ of attachment to one Enoch Marshall, who then was and ever

since has been and now is one of the deputies of the sheriff of the county of Kennebec, directing said deputy to attach all the right, title and interest of the said Crowell in and to the real estate described in said indenture, on and by virtue of said writ in favor of said Perry against said Crowell. And the said deputy, Enoch Marshall, in virtue of said writ and in obedience to said direction did on said seventh day of August, A. D. 1846, in the forenoon of the same, attach all the right, title and interest of the said Crowell in and to the said real estate described in the said indenture, and duly returned his said writ with a certificate of his doings thereon.

" And your orator further shows that said Perry duly caused his said writ to be entered in the said District Court, for the Middle District as aforesaid, at the term when the same was returnable, and continued said suit against the said Crowell to the April term of said Court, at which said term said Perry, by the consideration of said Court, recovered judgment against said Crowell for the sum of three hundred seventeen dollars and fifty-five cents debt, and ten dollars thirty-four cents costs of suit, and afterwards on the 24th day of April, 1847, the said Perry took out his writ of execution on his said judgment against said Crowell and caused it to be delivered to the said Marshall, deputy as aforesaid, and the said Marshall on the 22d day of May, 1847, in virtue and by direction of said execution, seized all the right, title and interest of the said Crowell in and to the real estate described in said indenture, being within thirty days of the rendition of the judgment in favor of said Perry against the said Crowell as aforesaid. (Here the notices, &c. preparatory to the sale, given by the officer are particularly set forth in the bill.) And the said Marshall on the said 26th day of June, 1847, at the time and place specified in said notices and advertisement, and in pursuance thereof, and by virtue of said writ of execution to him directed as one of the deputies of said sheriff and of said seizure, did expose and set up for sale at public auction all the right, title and interest of the said Crowell by virtue of said indenture in and to the real estate therein described, and your orator then and there

bid therefor the sum of four hundred and sixty-nine dollars, which was the highest sum bid for the same, whereupon the same was struck off by said Marshall to your orator ; and the said Marshall has executed, acknowledged and delivered to your orator a good and sufficient deed of the premises so by him purchased, which deed has been recorded in the registry of deeds for the county of Kennebec, within three months of the sale.

" And your orator further shows that the said Crowell on the 16th day of September, A. D. 1835, for the consideration of one hundred dollars alleged to have been paid by Michael Jackson Woodward of said Gardiner, by writing under the hand and seal of the said Crowell, demised, released, assigned and made over to the said Michael J. Woodward all the right, title and interest, which he, the said Crowell, had in and to the real estate described in said indenture, and the buildings and improvements thereon made by him, the said Crowell. Your orator further shows that the said Michael Jackson Woodward was then a young man not far from majority, unmarried and without a permanent place of work, but went from place to place as he found employment, that he was the brother-in-law of the said Crowell, and that he died in the year 1836, unmarried and intestate. That no letter of administration was ever granted upon his estate; that he never lived upon said real estate described in said indenture, and never paid said Gardiner any part of the purchase money for the same. And your orator further shows that the said Crowell at the time of said assignment to the said Michael Jackson Woodward, his brother-in-law, was embarrassed by and involved in debt, and continued to be so till some few months before the service of said Perry's writ of attachment as aforesaid, when he, the said Crowell, made an assignment of all his property for the payment of his debts under and in pursuance of the law of the State of Maine made for the benefit of insolvent debtors.

" Your orator further shows, that the said Crowell after said assignment of said indenture and his interest, right and title under and by virtue of it to the said Michael Jackson Wood-

ward, he conducted in all respects as he would or could have done, had he, the said Crowell, not made over his right, title and interest in and to the premises, he, the said Crowell, continuing to labor upon and finish the buildings and improvements, which he had begun before said assignment, and he, the said Crowell, paid the first payment to the said Gardiner, towards the purchase money of the said premises, in the year 1837, and other payments to him, the said Gardiner, from time to time, till he had paid the whole sum before the seventh day of August, A. D. 1846, to the said Gardiner, and the said Crowell has ever been in possession of the said premises and still is, up to the time of the filing of this bill of complaint.

And your orator further shows that the said Michael Woodward, this defendant, father of the said Michael Jackson Woodward, and father-in-law of the said Crowell, long before and ever since the date of the indenture of the said Crowell and Gardiner, did and has resided and lived in Gardiner aforesaid, and was well knowing and fully acquainted with all the circumstances, conduct and doings of the said Crowell in relation to the said real estate of the said Crowell, his payment therefor, and his residence thereon, and also that his son, Michael Jackson Woodward, never paid any part of the purchase money to the said Gardiner, nor ever lived in the buildings, nor upon the premises aforesaid. And the said Michael Woodward well knew and was fully acquainted with the fact of the pecuniary embarrassment of the said Crowell at the time of the assignment of the said indenture to the said Michael Jackson Woodward, and its continuance till the said Crowell made the assignment of all his property for the benefit of his creditors under the insolvent law of this State.

And your orator further shows that before any payment was made to said Gardiner, towards the purchase of said real estate, there was a forfeiture of said indenture on the part of said Crowell and his legal representative, of which the said Michael Woodward was fully apprised, and the said Michael Woodward was well knowing to the assignment of the said Crowell of his property for the benefit of his creditors under

the insolvent law of this State ; and your orator further shows that said assignment became ineffectual by reason of the creditors of said Crowell refusing to become parties thereto, of which fact the said Michael Woodward was fully apprised, and that the said Michael Woodward well knew, that the time within which by the law of this State the creditors of the said Crowell could become parties to the assignment of his property for their benefit had expired on the eighth day of August, A. D. 1846, and the said Michael Woodward well knew that the said Gardiner had renewed his said indenture with said Crowell in favor of said Crowell after the decease of his son, Michael Jackson Woodward, by the acceptance from said Crowell of the purchase money after the forfeiture of said indenture, and the said Michael Woodward was fully apprised and well understood all the circumstances, objects and purposes of the said Crowell and the said Michael Jackson Woodward attending and in the giving by the said Crowell, and the receiving by the said Michael Jackson Woodward, the assignment of said indenture of him, the said Crowell and the said Gardiner, and the right, title and the interest of said Crowell to the real estate therein described and the buildings and the improvements of the said Crowell thereon made. Your orator avers and charges that the object and purpose of the said Crowell and the said Michael Jackson Woodward, in the giving by the said Crowell the assignment of the said indenture of him, the said Crowell and Gardiner, and all his right and title and interest in and to the real estate therein described and the buildings and the improvements made thereon by said Crowell, to the said Michael Jackson Woodward on the 16th day of Sept. A. D. 1835, and the receiving the same by the said Michael Jackson Woodward, was to defeat, delay and defraud the honest and *bona fide* creditors of the said Crowell; and your orator further avers and charges, that the said Michael Woodward, this defendant, being cognizant of and privy to the dealings and relations of the said Crowell and the said Michael Jackson Woodward in relation to said indenture, and their objects and purposes in regard thereto as aforesaid, did aid

and abet the said Crowell in the accomplishment of said object and purposes, and with the unlawful view of the said Crowell and Michael Jackson Woodward so by him countenanced and fostered, he, the said Michael Woodward, did by the consent and at the request of the said Crowell, with the intention and for the purpose of defeating, delaying and defrauding the honest creditors of the said Crowell, on the eighth day of August, in the year of our Lord, 1847, receive of the said Gardiner a deed of the real estate described in said indenture, the said Crowell having before that time paid said Gardiner the full sum mentioned in said indenture, and the said Gardiner having received the same of said Crowell in fulfilment of the conditions of said indenture. And your orator further shows that said Michael Woodward claims to hold and a right to hold said real estate by virtue of said deed from said Gardiner.

Your orator would present his case in another aspect, and humbly show, that the one hundred dollars alleged to have been paid by the said Michael Jackson Woodward to the said Crowell, as the consideration of and for the assignment of the said indenture between him, the said Crowell and Gardiner, and all his right, title and interest in the premises therein described and the improvements thereon made by the said Crowell, to the said Michael Jackson Woodward, was a loan of money by the said Michael Jackson Woodward to the said Crowell, and the assignment, though absolute in its terms, was in fact and truth conditional, and by the mutual understanding and agreement of the respective parties thereto, was given and received as collateral security for the repayment of said one hundred dollars, (so advanced as a loan) by the said Crowell to the said Michael Jackson Woodward, or his lawful representative, and upon such repayment with lawful interest said indenture, or the premises therein described, were to be reassigned to said Crowell or his lawful representative.

"And your orator further shows that the said Michael Woodward, this defendant, well knowing the character of the transaction between the said Crowell and the said Michael J.

Woodward relative to the premises, and the nature, object and intention of the said parties to said loan, and the assignment of said indenture and the right, title and interest of the said Crowell, and claiming to hold the same as heir-at-law of the said Michael Jackson Woodward by virtue of said assignment as aforesaid, and the said Michael Woodward having performed some services, furnished some materials for said buildings and improvements, and advanced some money out of his own proper funds, and pretending to hold said indenture and the premises therein described as collateral security to cover and protect and insure not merely the repayment of the loan of his son, Michael J. Woodward, to said Crowell as aforesaid, but also the claim he might have in his own right against the said Crowell for services, materials and moneys he, the said Michael Woodward, had rendered, furnished or advanced for the said Crowell, he, the said Michael Woodward, this defendant, did on the eighth day of August, eighteen hundred and forty-seven, by the consent and at the request of the said Crowell, take and receive a deed of the premises mentioned in said indenture of the said Robert H. Gardiner, and claims to hold the same absolutely.

" And your orator would further show that Lincoln Perry, a creditor of the said Crowell, before the institution of any suit against the said Crowell to enforce the collection of his debt, called upon the said Michael Woodward, and requested of him a statement and account of his claim upon the said premises, and the said Woodward refused to make any statement or give any account thereof to the said Perry.

" Your orator further shows, that the said real estate described in said indenture, at the time of the commencement of the suit by the said Perry against the said Crowell to recover his debt, was and ever since has been of the value of eight hundred dollars, that the said Michael Woodward has stated that he held said premises as security, and his claim was two hundred dollars against the said Crowell.

" Your orator would further show that ever since his purchase of the said premises at auction as aforesaid, he has been

willing to regard the interest of the said Michael Woodward therein as a trust, and his right thereto as a right in equity to receive the amount of any just account he might have against said Crowell, arising as aforesaid, and he, the said Woodward, this defendant, as entitled to hold the said premises as security for the same until his reimbursement, and accordingly your orator did on or about the fourteenth day of August last, and before the filing of this bill of complaint, tender to the said Michael Woodward, this defendant, the sum of two hundred dollars in the lawful coin of the country, and at the same time offered and proposed to him, the said Michael Woodward, to pay any further sum said Woodward had a just claim for, and did then request said Woodward to make and exhibit a statement of his claim, demand or debt, and give an account thereof to your orator, to the end that your orator might pay the same to said Woodward, and requested the said Woodward to give your orator a deed of the said premises upon the payment of the just debt or claim of said Woodward as aforesaid. And your orator avers that the said Woodward wholly refused to receive the money so tendered him as aforesaid and to make and exhibit any account of his claim or upon the payment thereof to give your orator any deed of the premises aforesaid. And your orator further shows that he has not a plain and adequate remedy at law, and therefore seeks relief of this honorable Court as a court of equity.

" Whereupon your orator prays your honors, that the said Michael Woodward, this defendant, may be directed and required upon his corporal oath, according to his best recollection, knowledge and belief, to make full, true, direct and perfect answer to all, each, every and singular, the matters and things herein contained, as if specifically and specially interrogated thereof and thereto ; and in case the said Woodward claims to hold said premises, he be directed and required upon his corporal oath to make a full, fair and just account of all and singular, his claims and demands against said Crowell and the balance which may be due him, if any, after deducting any and all claims and demands the said Crowell may have

against him for which he claims to hold the said premises as security; and that your honors would direct, require and decree that the said Michael Woodward, this defendant, make, acknowledge and deliver to your orator a good and sufficient deed of the said real estate, described in said indenture, without compensation or payment of any thing to the said Woodward, or upon payment of a certain sum of money to him, the said Woodward, as may be right, just and equitable in the case; and he prays for such other and further relief in the premises as is proper and is suited to his case, according to the principles and rules of equity.

"WILLIAMS EMMONS, Solicitor.

*Evans* and *Danforth*, for the defendant, after stating the facts, made these points in support of the demurrer.

Upon this state of the facts, it is quite obvious that the plaintiff is not entitled to maintain this bill in equity. The obstacles to it are numerous, and are not overcome by any of the allegations of fraudulent intent which are contained in the bill.

I. The plaintiff deduces his right to maintain it, from the statute of 1829, c. 431, § 1 and 2, re-enacted in the Revised Statutes, ch. 114, § 73, and ch. 117, § 50.

His right then is a *statute right,* as all our proceedings in equity are, and we must go to the statute itself, and to its letter, to ascertain whether or not he can maintain his bill.

By the statute then, ch. 114, § 73, "the right, title and interest which any person has by virtue of a bond or contract to a deed of conveyance of real estate, on specified conditions," may be attached, &c.

This right, &c. to a deed of conveyance, must be contained in a *written contract,* as the words plainly imply, and as expressly required in ch. 117, § 50.

The case shows that long, very long before any debt accrued from Crowell to Perry, or any suit by Perry, or any attachment of any supposed right of Crowell, all his right and interest by virtue of the written contract with Mr. Gardiner, had been forfeited. The conditions had not been performed. There

was no right which any body could enforce against Mr. Gardiner. The right which is made attachable by statute is a *legal* right, for which an action at law may be maintained by the original party, though in the hands of a purchaser on execution, it may be enforced in equity. It is a right which cannot be resisted, a property protected by law, not depending upon the pleasure or good will of the obligor, in any degree. In this case the bill explicitly states, that before the payment of any money to Mr. Gardiner, all the right of Crowell and of his assignee, had been forfeited. There was, therefore, no existing interest by virtue of any written contract, which could be attached or enforced. The indenture was utterly at an end. Neither Crowell nor any body under him could enforce it, in law or equity, against Mr. Gardiner. There was nothing therefore which by statute was made attachable. The bill, however, seeks to avoid this inevitable consequence, by the assertion that the defendant "well knew that the said Gardiner had renewed his said indenture with said Crowell, in favor of said Crowell, after the decease of his son, Michael Jackson Woodward, by the acceptance from said Crowell of the purchase money after the forfeiture of said indenture," &c.

If it were true that Mr. Gardiner had renewed the contract in favor of Crowell, that fact should be distinctly averred, and then it should also appear, to render Crowell's interest attachable, that he held his right by virtue of a written contract, whereas all that appears is, if there were any renewal of Mr. Gardiner's obligation, it was merely by parol. All that the bill asserts is, that defendant knew, as a legal consequence of payment by Crowell, that the indenture was renewed. Now no such legal consequence resulted. If the indenture was renewed at all by such payment, it was in favor of the assignee or rightful holder of it.

II. Another objection, fatal to the bill, is, that at the time of Perry's attachment on his writ, Aug. 7, 1846, nothing was due to Mr. Gardiner. There were no "specified conditions" to be performed.

The bill asserts that Crowell paid the first payment in 1837,

and other payments, &c., till he paid the whole of said payments "before the 7th of August, 1846." Nothing remained to be done by Crowell, nor by any one else to obtain a deed. The "specified conditions," upon the existence of which alone, the personal right of the obligee is made liable to attachment, had all been performed. The relations of the parties to the bond or indenture had become changed. All that the statute has authorized to be attached on mesne process and execution, is the personal right of the obligee to have a deed of conveyance of the land, on *the performance of conditions.* The statute never intended to subject any other and different interest which a debtor might have in real estate, to this mode of disposal by a creditor. The statute contemplated that the creditor should be required to perform *some* conditions. If there were none to be performed by any body, then the right of the debtor was a different right, from that authorized to be attached. *Shaw* v. *Wise*, 1 Fairf. 119.

III. Another objection no less fatal to the maintenance of the bill by this plaintiff is, that Perry, the creditor, did not attach, and the sheriff who held the execution did not sell that, which by the statute they were authorized to do. The language of the statute is, " the right, &c. which any person has, &c. *to a deed of conveyance of real estate," &c.* The right to have a deed, a personal right, and not an interest in real estate, is the attachable thing. But in this case, the bill says that Perry, the creditor, delivered his writ to Marshall, the deputy, directing him "to attach all the right, title and interest of the said Crowell *in and to the real estate, &c.,* and that the deputy did attach all the right, title and interest, &c. in and to the said real estate," &c. and again, that on the execution, he did expose and set up to public sale "all the right, title and interest of the said Crowell by virtue of the said indenture *in and to the real estate, &c.* and has made, executed, acknowledged and delivered to your orator a good and sufficient *deed of the premises* so by him purchased," &c.

Now according to the decisions already referred to, there is no right, title or interest in and to any real estate, by virtue of

such a bond or contract. There is a right to have a deed upon the performance of conditions, and that right is attachable, and whoever attaches it, must take care to attach that and nothing else. But when that right ceases, or becomes merged in a higher right, when the right to have a deed is changed into an interest in the land, then it is no longer to be treated as a right under that statute. The plaintiff has chosen to buy all the right of Crowell in and to the land, instead of his right to have a deed upon certain conditions. He must seek his remedy elsewhere than under the statute upon which he relies. It is not every *interest in* or right *to* land which may be sold on execution, none indeed unless authorized by some statute. Before the plaintiff can prevail he must show *such an interest or right* in and to the land, as may be taken on execution, and then frame his bill accordingly. *Stevens* v. *Legrow*, 19 Maine R. 95, is directly in point, and decisive on this point. There can be no escape from it.

IV. Another objection is, that this process does not lie against any but the obligor of the original bond. It is a *statute* remedy, and the statute carries it no further, for the obvious reason that no one can make another the assignee of an obligation. He may indeed convey the land subject to the contract, and perhaps in such case equity would find a mode of reaching it; but that is not this case. If an attaching creditor or a purchaser of a debtor's right wishes to secure his claim upon the obligor, it is easy to do so by giving notice to him not to convey to any other person. Perhaps an injunction might be obtained.

V. The plaintiff is not entitled to maintain his bill for another reason, viz: that long before Perry's attachment, all the right of Crowell had been assigned to M. J. Woodward, and upon his death descended to the defendant.

The argument hitherto has proceeded upon the ground that Crowell had retained the original indenture, and all his rights under it, whatever they were, up to the time of the attachment, but such was not the case. The bill states that on the 16th of Sept. 1835, Crowell assigned his interest to M. J.

Woodward. It seeks however to avoid the effect of this assignment, by declaring that it was done with a view to defeat and delay creditors, and was therefore fraudulent and void, and it is argued that this is admitted by the demurrer. The demurrer was taken with full knowledge of the consequences of such a step. As already remarked, the plaintiff's bill is to be taken together. The case which he presents, is that made out by the *whole* bill. Now we have to answer to the allegations of fraud with which the bill according to form abounds.

1. That the plaintiff is in no condition to complain of it. He was not a creditor of Crowell at the time nor at any time. He has been injured in no degree by any of the proceedings of Crowell or of the defendant, nor at the time of the transactions complained of.

But we answer to the allegation of fraud : —

2d. That the bill itself negatives the charge, or perhaps more properly speaking, waives it. It does not ask for relief on the ground that the plaintiff has been injured by the fraudulent assignment of Crowell to Woodward. It recognizes the assignment as good and valid, and only claims to hold the balance of the value of the land, after paying all defendant's just claims.

The transaction thus disclosed is a perfectly honest and fair one. Woodward, the son, advanced money and took the assignment as security. Woodward, the father, (defendant,) succeeded to the son's rights by inheritance, and also advanced money and materials, and finally to perfect his security took a deed. The plaintiff so regarded it, and is willing still to regard it in that light. Is there any fraud in all this? He asks relief not on the ground of fraud, but on the ground of a " resulting trust" in the premises.

VI. If, as has been shown, this is not a bill for relief against fraud, but in the " first part" of it, is a bill authorized by the provisions of the statute c. 117, § 50, and that only, and cannot be maintained as such, neither can it be on the ground of a " resulting trust." What right has this plaintiff to such a bill ? He stands before the Court as merely a purchaser of some-

thing at auction.   What is that something?   By statute, if all things had been done correctly, he would have purchased a right to have a deed on conditions.   He now claims to hold the interest of a *cestui que trust*, in the land purchased. What statute authorizes such an interest to be so disposed of, to be attached and sold?   None.   The mode of reaching a debtor's interest for the benefit of a creditor, is pointed out by statute, and the statute forms must be observed.

It is not intended to deny that the interest of a *cestui que trust*, may be reached by his creditors.   The inference is not to be drawn, that because this plaintiff cannot prevail in this bill, creditors are without remedy; when the estate of their debtors is held in trust.   The remedy in such cases is by a bill in the name of the creditor himself, what in equity is denominated a creditor's bill, setting forth the indebtedness, a judgment at law, want of property to levy upon, the estate held in trust for the benefit of the debtor, or conveyed fraudulently to delay the creditor.   The books are full of such cases. *Gardiner Bank* v. *Wheaton*, 8 Greenl. 373, is exactly such a case ; *same* v. *Hodgdon*, 14 Maine R. 453, is also of the same character.

If we have made ourselves intelligible to the Court, we contend that the plaintiff can have relief on neither ground. Creditors might have it, but the plaintiff is not a creditor.

He does not stand in a relation to authorize him to object to the validity of the transactions between Crowell and his assignee.

The plaintiff seems to have a confused idea that in some mode or other, he is entitled to relief, if any fraud is in the case.   So he might be if he is likely to lose any right which he has, by reason of fraud.   If any transaction has been interposed to prevent his acquiring a right, which transaction is invalid by reason of fraud, he may maintain his right, not however by a bill for relief against fraud, but by a bill setting up his right, his statutory right, and when the transaction is interposed to prevent him, he may expose the true character of it, and thus remove it out of his way.

To maintain the bill under either aspect, would be extending remedies in equity much farther than has yet been done, or than any rights of creditors, or public policy requires, would be to confound distinctions which are obvious and desirable to be preserved.

*Emmons,* for the complainant.

The defendant has by his counsel interposed a demurrer to the plaintiff's bill. He has a perfect right to do so. The books say, there are two reasons for a demurrer to a bill — the obtainment of delay and the avoidance of a disclosure; and it may be added, in some instances to save costs. In the present case, the two first are strong enough. In discussing this question it may be well to state, *in limine,* one or two settled principles which lie at the foundation of the argument. One is, that objections preliminary to the discussion of the merits of the case, do not receive favor from the Court, when by amendments or modifications of the bill, they can bring the questions involved in it, so as to adjudicate upon its merits, where they have jurisdiction. *Traip* v. *Gould,* 15 Maine R. 86. The other is, that the demurrer admits the facts properly alleged in the bill, to be true.

The first ground of the demurrer would seem to be, that the plaintiff has not that character, by reason of want of privity between him and the defendant, which qualifies him to maintain his bill.

The Legislature enacted in 1829, c. 431, § 1, 2, " that the estate, right, title and interest, which any person has by virtue of a bond or contract in writing, to a conveyance of real estate, upon conditions to be by him performed, whether he be the original obligee or assignee of the bond or contract, shall be liable to be taken by attachment on *mesne* process, or on execution," &c. " That the purchaser of any such estate, right, title or interest, shall have the same remedies by bill in equity, before the Supreme Judicial Court or Court of Common Pleas, to compel the obligor or contractor to convey such real estate to him, &c., as mortgagors, or persons claiming under them, have to compel mortgagees or persons claiming under

them to convey mortgaged real estate. See also the 3d §. These enactments indicate what was the intention of the Legislature in reference to the subject matter involved and the remedies to be employed to cure the breach of the provisions; and if these enactments were now in force, there would seem to be no possibility of determining that in equity the plaintiff could not sustain this bill, for the reason above alleged. This matter is not omitted in the Revised Statutes. Provision in reference to it will be found in c. 94, § 50, as amended, and in c. 117, § 50.

By the law as it now exists, the purchaser of the right, &c. in question, shall have the same remedy to compel a conveyance as a mortgager has to compel, &c. Must this privileged purchaser be the creditor ? No such restriction or qualification is imposed by law upon the purchaser. The plaintiff is a purchaser, and as such, by the statute he would have a right to institute this bill. By the purchase, plaintiff became in equity the assignee of Perry, the creditor. He has paid to Perry the amount of the debt due him from Crowell, and equity would substitute him for Perry. If Perry had bid off the right in question, would he not have had a right to institute a bill in equity, to enfore the remedy provided by the statute ? He would have been a creditor. As the assignee of Perry, the plaintiff has all the rights, equities and remedies with which Perry was clothed. Within the fair interpretation of the 3d § of the law of 1829, Woodward, the defendant, may be regarded as the assignee of Crowell. Would not Perry have had a right in equity, to have reached Woodward, the fraudulent assignee of Crowell ? Then would the plaintiff have the right. But let us look at this matter independent of the views and intentions of the Legislature, as collected from their enactments at different times, in relation to *the point* under discussion.

Privity between the parties is not indispensably necessary in equity. Story's Equity Pleadings, § 513, note 1. Same, § 514. Here is authority enough for our case. *Pomeroy v. Windship*, 12 Mass. R. 514.

Another objection raised by the demurrer, and insisted upon in the argument of defendant's counsel, is, that Crowell never had any title to the land, and of course plaintiff could not obtain any by his purchase.

By virtue of the contract between Crowell and Gardiner, the former acquired a right, interest or estate, which by law was liable to attachment and seizure on execution against him ; this right, interest or estate the plaintiff obtained by his purchase and deed. True it was a personal right or estate in contradistinction to that of realty. *Shaw* v. *Wise*, 1 Fairf. 113. But the law has resembled it to a right of redemption and its transmission and acquisition are to be secured in the same manner as a right of redemption. Without a conveyance of the land the remedy provided by the statute for the benefit of the purchaser would be defective. Crowell had no interest and estate in the land, but a right to a deed of conveyance of the land, which in equity must be regarded as a right to the land. The plaintiff, by reason of the proceedings to enforce the debt of Perry against Crowell, acquired the right of Crowell under his contract with Gardiner, which right, it is alleged in the bill, has never been impaired by reason of any transactions between Crowell and others in consequence of fraud, of which the parties were cognizant, and the plaintiff seeks this conveyance of defendant, who holds a deed of the premises fraudulent as to the purchaser at the auction. In the suit of *Perry* v. *Crowell*, the right of Crowell under the contract was attached, and whatever may be the language of the bill or the return of the sheriff in reference thereto, such was the fact, and amendments can be made, if needful, to show and state the fact. The aforesaid right of Crowell was seized upon Perry's execution, and the process in relation to the disposition of it, was according to the provisions of the statute. It is true, between the attachment on Perry's writ and the seizure on his execution of Crowell's right under the contract, a deed was given to defendant. But that deed, so far as Crowell's creditors and the plaintiff who is by equity substituted for Perry, who was a creditor, are concerned, did not give the defendant

any title, which he can set up against the plaintiff. The demurrer admits, that Crowell from the first dealt with this right fraudulently, and Woodward, the son, and Woodward, the father, knew it, and were participators, because the bill so alleges. And as relates to the plaintiff the defendant has not and never has had any title, which he has a right to hold in opposition to the plaintiff; it is therefore immaterial so far as concerns the defendant, whether Crowell's right was acquired by attachment or seizure upon execution, even though defendant's deed was prior to seizure on execution. The proceedings under which the plaintiff acquired his right were such as the law prescribes in regard to the disposition of a right of redemption. These were sufficiently correct or are capable of being made so by amendment, and the deed held by plaintiff is unobjectionable. Besides the deed of defendant, being admitted to be fraudulent, he is estopped both at law and in equity, certainly the latter, to call in question the regularity of the proceedings under which the plaintiff obtained his deed. *Pomeroy* v. *Windship,* 12 Mass. R. 514. The title of defendant as against Crowell is perfectly good, a fraudulent deed as between grantor and grantee is unimpeachable. Crowell's right in and to the premises is gone forever. And if plaintiff were to obtain a deed by bill in equity of defendant, on the ground of fraud, Crowell could not afterwards call upon the plaintiff for the bond. He could not take advantage of his own wrong.

Another objection made by defendant's counsel is, that Crowell's right, if any existed that could be available to a creditor, should have been acquired by a levy upon the land, and not by sale of the right. It is a sufficient answer, that Crowell never had any right or estate in the land; but his right was to a deed of the land, which is in equity a right to the land. The law has prescribed the mode in which it can be acquired, and that is by sale as an equity of redemption. The title being by statute, the statute must be followed or the right cannot be acquired. The Court have settled this question. *Aiken* v. *Medex,* 15 Maine R. 157.

The plaintiff in this case, could not therefore have any remedy at law. A bill in equity is the only remedy. A bill in equity will lie in the Circuit Court to set aside a conveyance made in fraud of creditors, for there is not, in a proper sense of the term, a plain, adequate and complete remedy at law. *Bean* v. *Smith et al.* 2 Mason, 252. This Court has equity jurisdiction where the bill charges fraudulent conveyance of land, made to *defeat and delay* creditors. *Traip* v. *Gould et al.* 15 Maine R. 82.

The defendant's counsel further insists, that it cannot be fraudulent as regards the creditor, Perry, for his execution has been returned satisfied — nor as it respects the complainant, for he knew at the time what he was purchasing, and has obtained all he purchased, &c. This is a pretty remarkable argument to come from the defendant. Between the attachment on Perry's writ and the seizure on execution, the defendant colludes with Crowell and obtains a deed, and now says that Perry has received his pay, and the complainant has paid the debt by the purchase of something that cannot be realized. Suppose Perry had purchased Crowell's right under the contract, and had offered for the same at auction the amount of his claim against Crowell, and the officer had given Perry a deed, and returned the execution satisfied; and Perry had instituted his bill to obtain a deed according to the provisions of law, would it have been a good answer on the part of the defendant, to say, your execution is returned satisfied, and you have no claim to enforce against me or Crowell? If such an answer in such a case would be good, then it is in this, and not otherwise.

Another ground of demurrer taken by defendant's counsel, would seem to be inconsistency in the allegations of the complainant's bill.

The objection is *not* that the bill is *bad* for *multifariousness.* The complainant sets forth a case of fraud and seeks redress, on that account, in the first part of his bill. Then, in case his proof should fail to establish such a case, he claims to have the Court grant its aid and relief as a case of resulting

trust. The bill is framed, like a declaration at common law, containing different counts. The relief that the Court is desired to afford, is sought, so that both aspects of the case may be exhibited, and the relief can be granted, as either mode shall be established, by the Court, in pursuance of the prayer. The complainant asks the Court to decree, in case he satisfies them that he is entitled by reason of fraud, that the defendant give him a deed ; in the event, he makes out a case of resulting trust, that the defendant give a deed upon the payment to defendant by plaintiff of a certain sum ; so that there is no inconsistency and no difficulty, technical nor otherwise ; we ask a deed, either without paying any thing, or with paying such a sum as the Court may order. And the case of *Scudder* v. *Young,* 25 Maine R. 155, is an authority.

That a resulting trust might be reached by a bill suitably framed in a proper case, we contend, upon the authority of the *Gardiner Bank* v. *Wheaton,* 8 Greenl. 373, and we regard this authority as important in the present case.

The ground of the allegation, that nothing could be attached, is, that the bond had run out. It is stated in the bill, that Woodward, the son's right, had gone, because he failed to make the payments according to the terms of the bond. But Gardiner in favor of Crowell and for *his benefit* waived the forfeiture, and by that means made it good to Crowell. And it was good in him, at the time of the attachment.

If Crowell had an interest by the bond, and the complainant has legally purchased that interest, upon the allegations of fraud in the bill, which so far as well laid, are admitted by the demurrer to be true, that gives the complainant a valid claim against Woodward, the defendant. True Woodward was no party to the bond, and, as we say, had no derivative title to or interest in it ; but the complainant purchased no claim upon Gardiner. Gardiner fulfilled his contract by giving a deed to the defendant, innocently, in compliance with the wishes of Crowell, growing out of collusion between Crowell and defendant. The whole title to the land passed from Gardiner to Woodward, the defendant, by the deed of the former to the

latter.    This title was and is good in defendant against every person, except the creditors or their legal and equitable representatives, assignees or privies of Crowell, whom Crowell and defendant intended to defraud, delay or defeat.    The complainant falls into the number of those embraced in the above named exception.

We contend that the complainant, by a fair construction and interpretation of the laws in reference to this subject, has a right to bring and sustain this bill, as he is a purchaser and the defendant is assignee of Crowell ; that in equity privity is not essential to render one party amenable to another, in all cases; that this is one of the cases where it is not indispensable; that Crowell's right under the contract was attached, that it was seized on execution, that the mode of disposing of it was such as is adopted on the seizure and sale of an equity of redemption ; that it was duly purchased by complainant ; that he has the officer's deed conveying the right under the contract of Crowell in due form.    That the proceedings were sufficiently regular, and the irregularities and vagueness in description, are not so great, if any exist, as to vitiate ; are, if *necessary, amendable;* and at any rate, are not open to defendant, against complainant, who has an unexceptionable deed. .

That unless the complainant can maintain this bill, he is without remedy ; that all has been done, and in a manner prescribed by law, to enforce the collection of Perry's debt, and by the confession of the demurrer, the title of the land is fraudulently in defendant.

The prayer of the bill is suited to the two modes of stating the plaintiff's case, and there is no difficulty, as defendant's counsel suggests, of knowing what answer to make, and in the one mode or the other, either on the ground of fraud, or the ground of a resulting trust, it is confidently believed the Court can grant relief to the plaintiff.    If there were any technical difficulty in embracing in the bill the two grounds of possible claim, so that if the answer of the defendant or the proof in the case, should be more fitted for the one or the other and

either should be good and be sustained, the plaintiff could have relief, then, I say, if there were any difficulty the Court might order one stricken from the bill. But it is confidently believed, there is no possible objection to the bill as it now stands on the score suggested. That the demurrer should be overruled and the defendant be required to file an answer to the bill, that in case the merits of the case should be with the plaintiff, the Court may give such relief as may be just and proper.

The opinion of the Court was drawn up by

WELLS J. — Several objections are made to the plaintiff's bill.

1. It is denied, that the debtor, Allen Crowell, had any attachable interest in the land, because the whole amount, due on the contract, had been paid to R. H. Gardiner, before the attachment was made.

The Rev. Stat. c. 114, § 73, provide that rights of redemption and the " right, title and interest which any person has, by virtue of a contract, to a deed of conveyance of real estate, on specified conditions, may be attached on mesne process, and the same lien thereon shall be thereby created by such attachment, as if they were tangible property."

The right becomes perfected, by the payment of the money, mentioned in the contract, and may be enforced by a bill in equity. Rev. Stat. c. 96, § 10. The more the debtor has paid, the more valuable is his interest, and the greater reason why creditors should have the benefit of it, in satisfaction of their debts.

The statute does not limit the right to be attached, to a time, before the conditions have been performed. It describes it, and the mode, in which it accrues, and consequently authorizes its attachment, during its existence, and at any time, after its inception, and before its consummation, by a conveyance of the title. *Whittier* v. *Vaughan*, 27 Maine R. 301.

2. It is contended, that the right of the debtor had been forfeited, by a failure to comply with the terms of the contract.

But the bill alleges, that the time had been extended, by

the reception of payments from Crowell. Payments made, after the time specified in the contract, would have that operation. Gardiner was at liberty to extend the time, and by doing it, he gave to Crowell the same right, which he would have had, by a strict compliance with the conditions. The waiver of performance, at the time, specified in the contract, attaches to it, and becomes a part of it, and the creditor takes it, by the provisions of the statute, as it belonged to the debtor.

3. It is objected, that the officer, in making the attachment, in advertising and in giving the deed, did not properly describe the debtor's right.

The bill alleges, that he did " attach all the right, title and interest of the said Crowell, in and to the said real estate described in the said indenture." The same language is used in relation to seizing the right, on execution, and advertising it for sale. It is also stated, that the right, &c. by virtue of said indenture, in and to the real estate therein described, was sold at public auction, and that the officer " has executed a good and sufficient deed of the premises," &c.

Between the original parties to the contract, no lien attaches to the land. But in relation to a creditor, the statute declares it to be an attachable interest, as if it " were tangible property." It is not the contract, which is attachable, but the right under it, and in the language of the statute, a " lien" is created on the land, by the attachment.

It is not such an interest, as would give the purchaser a seizin in the land, so that he could maintain a writ of entry, as was decided in *Shaw* v. *Wise*, 1 Fairf. 113. But the statute makes it an attachable interest in the land.

In the case of *Stevens* v. *Legrow*, 19 Maine R. 95, it is stated, that there was attached " all the right, title, interest, estate, claims and demands of every name and nature," &c. It was considered by the Court, that these terms were broad enough to effect an attachment of the debtor's right, under the contract. But as the officer, in that case, advertised and sold the right, describing it as an equity of redemption, the sale was considered inoperative.

In the present case, it is understood, from the allegations in the bill, that the officer, in his proceedings, refers to the indenture; by an examination of which, the exact nature of the debtor's interest could be ascertained.

The allegations in the bill are sufficiently specific, to warrant the conclusion, upon the present exhibition of the facts, that there has been, in the attachment, advertisements, sale and deed, a compliance with the statute.

4. The defendant holds the land by a conveyance from Gardiner, and it is contended, that he being the party contracting with Crowell, the plaintiff should have brought his bill against him. The statute does not prohibit the owner of real estate, who has entered into a contract, to convey it, upon conditions, from alienating it. But his liability to damages, for a breach of his contract with the original party, would not cease, upon such an alienation.

When the defendant took his deed, the attachment was made, and by the record, he had constructive notice of its existence. He is charged with taking it, for the purpose of aiding Crowell, to defraud his creditors. But Gardiner not being a party to the fraud, and having power to convey, the title passed from him, by his deed to the defendant. Between him and Gardiner, it is vested in the defendant, notwithstanding he took it, with the design to defraud the creditors of Crowell.

Gardiner has not the title, and the plaintiff can derive no benefit from a conveyance, except from one having the title.

Unless creditors can sustain a bill against the assignees of the party contracting to convey, their rights would be defeated, in every case, where such conveyance should be made.

The Legislature has given to creditors the right to take this species of property, and by section 50 of chapter 117, the purchaser " shall have the same remedy by bill in equity to compel a conveyance of it, as mortgagers have to compel mortgagees to convey to them, on performance of, or offer to perform the condition of a mortgage.

By chap. 125, sect. 16 and 17, Rev. Stat., the remedy of mortgagers extends, not only to mortgagees, but to those claiming under them.

But the statute, in giving the remedy by bill in equity, does not enact against whom it shall be brought; it does not state the persons who shall be made parties to it.

The right, existing as a lien on the land, whoever purchases it, with a knowledge of the right, must take it *cum onere*, and must respond to the claim, in the broadest extent, to which a bill in equity can reach.

The creation of a "lien," by the attachment, must have been intended, to preserve the right of the creditor from a conveyance by the owner of the fee to the debtor, or any other person.

Although this point was not decided in *Aiken* v. *Medex*, 15 Maine R. 157, the opinion there expressed upon it, adds strength to the present conclusion.

5. Several years before Lincoln Perry's debt accrued, Crowell assigned the contract, made with Gardiner, to Michael J. Woodward, the defendant's son.   If this assignment had been *bona fide*, it would defeat the plaintiff's claim, because Crowell could have had no interest in it, after the assignment of his entire right under the contract; there would be nothing remaining, for a creditor, afterwards to attach.

But it is alleged in the bill, that this assignment was made by Crowell, to defraud his creditors, and that he afterwards made the payments on the contract, in the same manner as if no such assignment had been made.

It is contended, that Perry, not having been a creditor, when the assignment of the contract was made, cannot impeach it as fraudulent.

The law, existing at the time, when the assignment was made, was similar, in relation to this species of property, to the present one, and made it available to creditors.   Debtors then could not make a conveyance of it, valid against creditors, if done to defraud them.

The stat. 13 Eliz. c. 5, is not confined in its operation, to

creditors, existing at the time of the commission of the fraud, but embraces those, who subsequently become such. It is not necessary to prove, that the fraud was meditated against those who might become creditors, at a subsequent period.

If the transaction is actually fraudulent against any creditor, any and all creditors may impeach and resist it, and are entitled to the aid of the law, in appropriating the property, fraudulently conveyed, to the payment of their debts. The uniform construction of that statute includes subsequent, as well as existing creditors. *Anderson* v. *Roberts,* per Spencer C. J., 18 Johns. R. 513 ; *Clapp* v. *Leatherbee,* 18 Pick. 131 ; *Parkman* v. *Welch,* 19 Pick. 231 ; *Clark* v. *French,* 23 Maine R. 221.

6. The plaintiff is willing to consider the defendant, as holding the premises in trust, and to allow him such sum, as his son, from whom he is alleged to claim as heir the assignment from Crowell, paid to Crowell, or any sum, which the defendant, himself, has paid, to acquire the estate.

What would be the effect of the transaction, if the son took the assignment from Crowell, as collateral security, for money loaned, Crowell retaining a valuable interest in the contract, it is, at present, unnecessary to determine.

If the defendant is willing to admit, that he holds in trust, and to convey to the plaintiff, upon receiving such sum, as is justly due, no objection can arise to such an adjustment.

The plaintiff succeeds only to the right of the debtor, under the contract with Gardiner, and having purchased that right alone, he must be confined to it. He can hold nothing more than what he has purchased. The creditor might have other modes of obtaining his debt ; but it does not appear, that he has asssigned his debt to the plaintiff, or that the latter has any other right, than that, purchased by him, at public auction.                      *Demurrer overruled.*